Ministerio Roca Solida v. United States. Mr. Becker, are you ready to proceed? The government? Go ahead, Mr. Becker. Thank you. Good morning, Your Honors. May it please the Court. My name is Joseph Becker and I represent Ministerio Roca Solida Church, the appellant in this case. The Court below dismissed our complaint pursuant to 28 U.S.C. 1500 because... Mr. Becker, in the blue brief at 12, you say Southern Nevadans have seen recently what exactly what self-indication of rights may look like. And I'm emphasizing this. Judicial actions fostering such scenes should not be encouraged. Where in the record are you referring? What is that supposed to mean exactly? And is that a threat to murder police officers? Because it sure sounds like you're saying that if the courts follow the law, then riot and rebellion will follow. It certainly isn't a threat. I will say that the climate in the state where this action emerges is very... People are very conscious of what's going on. Let me put it this way. Are the courts open and in session? In Nevada? Yes. Yes. So the Great Red hasn't been suspended, for example? Correct. And just exactly what are you trying to tell us? I'm just trying to say that to the extent people perceive that they don't have their day in court, that... They may take up arms? Right. And if they take up arms, what's the responsibility of the judicial branch other than to report that to the competent authority? Well, I mean, the responsibility of the judicial branch, of course, is laid out in the Constitution, but... And in our oaths. Correct. To apply law to rich and poor alike. Correct. Without favor or fear. I don't disagree. Go ahead. All right. As the penalties conceded over and over in their answer brief, the purpose of Section 1500 is to save government from the burdens of redundant litigation. However, applying Tohono to dismiss our church camp from the court of claims does reduce redundant litigation. First of all, at the court of claims, appellants only wanted to stay pending resolution of other claims at the district court. You seem to be making an argument in your brief for us to effectively either ignore or overrule Tohono? Well, to be clear, appellants definitely see that as a very bad decision. It was heavily divided, as you're probably aware. It overturned... The dissent and the concurrence. Right. It overruled 90 years of what has been the process here. And it's very, very unfavorable to appellants. Yes, it is. We, of course, realize the way back to that decision is through the appeals process. And that's part of the reason why we're here. But stare decisis says we follow what the court says. Right. Of course, stare decisis should have said that 90 years of precedent regarding... Go argue with the Supreme Court. What's that? Go argue with the Supreme Court. If necessary, of course, as I said, that's part of the reason. Can I ask you this? I mean, I understand that there are potential arguments for the unconstitutionality of the combination of 1500 and the statute of limitations as applied. Right. Not quite yet, but maybe soon. Do you mean not quite yet in our case? Yes, that's right. But what, if any, argument do you have that under 1500 itself, all constitutional considerations aside, that dismissal is improper? Well, I guess I was headed in that direction. A case decision that was filed a couple of months after we argued this case below at the Federal Court of Claims is Skokomish case. And I've been arguing from the beginning that this doesn't solve the problem of redundant litigation, this 1500 in our case, because we could win every other claim. We could win the torts claim, we could win the procedural substance of due process claim, the free exercise claim. We'd be right back here. But I mean, I guess I do not see how that argument remains open as an interpretation principle under 1500 at this point. Okay. My answer to that question then is Skokomish and Klamath cases. I can cite those if you're not familiar, but the one I like best because it's sort of a condensation of 40 pages into 15 or 18 pages is Skokomish v. U.S. It's not, it would have to be persuasive authority here because it's the Federal Court of Claims, Judge Allegra below. Dating from when, sorry? It's 2014. It was filed in March of 2014. And really what that case does, I think, is it provides a technical legal explanation within the context of Tohono by dissecting carefully what are and what are not operative facts. I mean, part of the problem with Tohono from our perspective is it took the word claim from the statute. You're wasting your time if you tell us about the problems with Tohono. Okay. We don't get to identify problems with Tohono. Okay. Well, then let's look at what Skokomish says we should be thinking about to answer your question as to what is my argument outside of whether the operative facts justify dismissal under 1500 and Tohono or whether that dismissal is not justified. Was that case cited to us at all? No, it wasn't. You didn't file a notice of supplemental authority? I didn't. When did you become aware of it? About two days ago. When did it come down? In March of 2014. But under that case and Klamath Irrigation, which came out just a couple of months before it was condensed by Skokomish, there's four questions that the court has to look to decide whether the operative facts justify dismissal or not. Because remember, Tohono concentrates instead of on claims on operative facts. Those four tests are the issues of fact and law raised by the four claims largely the same. In our case, four claims. The multiple claims is an adverse merits decision. If an adverse merits decision were rendered on the later file claims, third thing is, will the plaintiff rely on substantially the same evidence to support each of these claims? And then the fourth is sort of a catch-all according to the Skokomish court. Is there any logical relationship between the two claims? And that's, they clarify that by saying, is there a logical relationship between the claims not revealed by the first three tests resulting in substantial duplication of efforts? When we look at those questions in the case, our facts, we shouldn't have been dismissed by 1500 or under Tohono. The first question, are the issues of fact and law raised by the four claims largely the same? And when we have negligent flooding, duty breach, proximate cause, etc. Right, but just, I mean, you have in the Nevada litigation a Little Tucker Act takings claim. How could that possibly be distinguished from the Big Tucker Act claim in this case? I would concede that point. I mean, that point is very well taken. We, you know, optimistically, in order to save the client, you know, coming out here, hope to get a quick resolution of this case such that the temporary taking might have been less than $10,000 in damages. It's not. But the problem we're faced with now, and I guess I'm glad you brought this up because I was getting here anywhere. I mean, I guess what I'd like to emphasize before I... Look, I get the problem. What I don't see is how your problem is addressable as by applying 1500 or rather by deciding that 1500 is inapplicable. That's what I don't get. If we could agree that 1500 is inapplicable to our negligence case, in other words, let's assume hypothetically that I had not filed the Little Tucker Act claim in the district court. Let's assume that what I did is I filed the claim for, I mean, this all comes about from the moving of a waterway, right? But let's assume I only did the Federal Tort Claim Act claim, the procedural due process claim, the substantive due process claim, and the religious freedom claim. I mean, if we can get to the point where under Skokomish and Klamath that those claims are not duplicate claims or those claims are not barred by 1500, then we could, because we're well past $10,000 now after five and a half, almost six years into this thing, we're well past the $10,000. We could go to the district court. We could presumably say you no longer have jurisdiction over the takings claim. But the problem is I can't do that unless I know that I can bring that takings claim again in the Federal Court of Claims for 10,000 or more. And if the court is going to hold that all my other claims, which have nothing to do, I mean, under Skokomish have nothing to do with the takings claim as far as all that, the four tests I just said. If I can know that I can do, I can withdraw that, and I can bring... It's just so you know you're under your rebuttal time. Yes. It's still green. I understand. I see the clock. Thanks for pointing that out, though. I mean, if I know I can do that, then... Then you could drop those and refile here. Right. And that would be fine. But it's not clear to me, based on the sort of complications that we have from Tohono, that the court would rule that way. So I've got to preserve at least that $10,000. But all your claims in both lawsuits, it's based on the same property, the same water rights. Right. And revolve around the same government conduct, which is the diversion, the water diversion project. That's right. Right. That's right. But again, if you look at... That's the problem. That's the problem with Tohono. Those sound like substantially the same operative facts. Except if we look at Skokomish and Klamath as what operative facts now are under the post-Tohono situation, then that's not true. So I guess I would encourage the court to do that, to write a decision that says, well, had he not done the Small Tucker Act claim, then... Or Little Tucker Act claim in the district court, this wouldn't have been a problem. But because he did, it is, then I can... Can I ask you how close... I can solve all the problems. How close are you to the end game in the Nevada Act? I'd like to say close. But cross motions for summary judgment filed late last year. I can't imagine that there aren't factual issues that are going to have to be cited as trial. The Ninth Circuit, we named the refuge manager of individual capacity. She appealed the non-dismissal of herself and individual capacity of the Ninth Circuit. That's been fully briefed. We're waiting for oral argument there. I think it's very realistic that we want... I mean, I'm the guy that started the Brandt case, right, in 2006. I filed the counterclaim in 2006. That just got decided in, what, the middle of 2014. That's eight years. The cases are similar in some ways. I can't see it happening. I mean, I think it's a real problem. Just in case you didn't understand, my brethren, when they say Nevada, they mean Nevada. Right. Well, I did mention that to the trial court judge, but I'm short of time, so I'm going to call my minute if I can, just in case there's something I need to reserve the balance for. Californians call it Nevada. I'll call it Nevada and Nevada. Good morning. May it please the Court, Anna Katselis for the United States. The CFC's dismissal of this action for lack of jurisdiction under Section 1500 must be affirmed. As the Supreme Court recently clarified in Tohono, two suits are for or in respect to the same claim, precluding CFC jurisdiction, if they are based on substantially the same operative facts. The relief requested is not relevant. The CFC's conclusion that the incident action is based on substantially the same operative facts as Solid Rock's earlier filed lawsuit in the District of Nevada or Nevada is unassailable. In both suits, Solid Rock complained that it was injured by the same diversion project that the Fish and Wildlife Service allegedly completed in late 2010 near its property. Solid Rock, in its brief, does not really dispute that its district court action was filed first or that both actions arise out of the same allegedly unlawful government conduct. Rather, based on a hypothetical possibility that Solid Rock's district court action may not be argued, Solid Rock essentially argues that it should not have to choose between its two lawsuits. Can I ask you, Mr. Becker says, put aside the Little Tucker Act claim. In your brief, you already do put aside the Federal Tort Claims Act flooding claim as not supporting a 1500 bar. So what's left are free exercise claims, a procedural due process, and is there also substance due process or maybe not? I believe so. What issue would be tried and explored and whatnot in the Nevada case, putting aside the things I said to put aside, that would overlap with issues to be tried in this case? Your Honor, if you take us, if you take aside the Little Tucker Act claim in the district court, you have complaints of unlawfulness and requests for injunctive and declaratory relief based on these other legal theories. It's been clear since Keene in 1993 that the legal theory isn't relevant. That's why I asked you about what issues, factual, what factual issues would be relevant to the resolution of the Nevada claims other than the Little Tucker Act and Federal Tort Claims Act that would be relevant to the resolution of this case? And let me throw in, because it's pretty close, could Solid Rock be made whole in either court alone? Yes, Your Honor, it could. I think what Solid Rock wants to do, ideally, as they have explained it, is they want to proceed in the District of Nevada, and what they would hope for is declaratory relief and an injunction putting the water back to where they would like it to be, and then compensation for a temporary taking. If they obtain that, they would be made completely whole. Right, but they also now say their temporary taking claim is worth more than $10,000 so that they cannot be made whole for the loss of the water during what's going to be more than six years. Right. Okay, so, and I think this is actually a slightly different question from the issue question that I asked you. What issues would be tried in the Nevada case putting aside the Little Tucker Act claim and putting aside the Tort Claims Act flooding claim that would overlap with issues here? I think the issues that would be tried in the District of Nevada case... I don't mean tried in the... I don't care if it's summary judgment. What are the issues that would have to be resolved? They're alleging, and then you have constitutional, alleged constitutional violations of whether the diversion of, I mean, you know, the factual issues are, I mean, the factual basis needs to be flushed out. We're only at the complaint stage here about, you know, the diversion of the water, water rights, etc. And that would be tried in the District of Nevada. Whether they had a certain kind of protectable property right in the water would be a common issue. Whether the government's reasons for moving the water would be an issue. Is that... That's my understanding, Your Honor. Correct. You would have, you know, the same, it would be the same facts, the same legally operative facts about, you know, their ownership of the property and the Fish and Wildlife Service's alleged diversion that would have to be flushed out. And the issues would be, they're alleging at this point, then constitutional violations. So it would be, what would be tried is the validity ultimately of the government action would be the question. Right, but that's a level of generality that I find a little bit too high. So, for example, if it were completely undisputed that they had a protected property right in the water, then I'm having some trouble understanding whether the government was sort of motivated by a, you know, discrimination against religion or whether there was an adverse effect on their ability to exercise their religion. I'm having a little hard time seeing whether those issues would have any overlap with the issues in this case. But if there's a dispute about the underlying property, right, if there's a dispute about, I don't know, surrounding background regulatory authority that affected the scope of the property, right, then I understand that there's an overlapping issue, but not just the fact that water was diverted, period. I'm not sure I quite understand. And again, we're only at this stage, we're only at the complaint stage, but, you know... You got a dismissal at the complaint stage. We are, we are. And if you, we would encourage the court to look at, you know, the appendix at pages 13 and 14 and 36 to 39. And the factual allegations that are relevant are that this ownership of, the ownership of the land and the alleged diversion of water in late 2010. The legal theories asserted are different. You have the constitutional, they're additional. You have constitutional, alleged constitutional violations, the Federal Tort Claims Act violation, and also the Little Tucker Act claim. But based on exactly the same facts, Your Honor, they're alleging a Tucker Act claim in the CFC. Can I ask you, this is a doctrinal question, not a record-specific question. In any of the 1,500 cases, to hone O'Keene and a lot from this court, in any of them was either the CFC action or the other action that raised the 1,500 problem, one that involves constitutional claim. I don't think that was true in either Keene or Tohono, right? I think those were both non-constitutional claims on both sides, the CFC claim and the one... As far as I recall, Your Honor, that's correct. I don't think that changes the inquiry in any way. In both instances and what 1,500 contemplates is that there may be a district court action, as there is here, challenging the validity of the government action, right? And so then if, for example, they succeeded in the district court on this was an invalid diversion of water, equitable relief, declaratory reef, that's the end of the day because you don't get the compensation, but then... Well, no, not completely. They get the water back, but if it took eight years, they get eight years worth of time. There's an issue that remains about whether there was eight years of temporary taking for which they get compensation now worth more than $10,000, which they presumably under the statute can't get in Nevada. Correct. And I think, yeah, correct. But I still think that the principle is the same because I think in most of these cases, they're challenging the validity on other grounds. The government concedes that the statute of limitations could eventually bar the takings claim. It's possible, Your Honor. So under what authority can Congress prevent plaintiffs from asserting constitutional rights by declining to waive sovereign immunity? Congress has the general authority to define the jurisdiction of the courts as it has done in this case. And it's... And Congress bar the courts from hearing a constitutional claim? They have the option of... They may face a choice of proceeding with the district court action to its completion, or at some point deciding to dismiss that and pursuing their Tucker Act claim in the Court of Federal Claims. They may have to face that choice, but the remedy for that lies with Congress and not this court. I think... Suppose we now move ahead to August of 2016 and the six-year statute has run. I assume you think that the accrual date on their takings claims, whether permanent or temporary, is the date of completion of the diversion project? Correct. Okay. So it's six years now, and they can no longer make a Tucker Act takings claim here. At that point, why is it not clear that both under the APA and under default injunctive power of district courts that they can litigate the takings claim in the Nevada Court to get their water back? The little Tucker Act claim. No, the big Tucker Act. I don't care. Actually, it doesn't matter whether it's big Tucker or little Tucker. They have an APA action no longer barred by 704's adequate remedy somewhere else. They independently have an injunctive relief available and an argument that there is a just compensation remedy provided. So they can argue that this is a taking and get the water back if they win on the taking claim. If they're within the statute, there is no APA. They've made no APA claim in this case. In this case, I'm talking about the Nevada action. Why can they not? Until the statute of limitations runs, they have an available alternative remedy. So cases like Horn and the regional railroad reorganization cases say, as long as the Tucker Act remains available, there's no taking claim because all you're entitled to is just compensation on the assumption that there was a taking. Take away now the right to just compensation for the permanent water taking. At that point, I think that the regional railroad, Blanchette I guess is the case. The railroad reorganization case talked about Horn recently. Going back to Larson and Lee and Malone against Bowdoin. I think they all make clear that you can litigate for injunctive relief, a taking claim, when there is no statutory compensation remedy still available to you. Within the statute of limitations. They don't say anything about the statute of limitations. Well, I'm not sure about that, Your Honor. They don't say anything about the statute of limitations. And what you have here is a statutory bar on their making their claim during the limitations period without paying a price of giving up their other legal rights. I mean, possibly. At this point still, it is hypothetical. I agree it's premature. It's premature and it's hypothetical and it's not clear. Can the district court in Nevada enter equitable relief simply saying, give them their water back? Not money, water. Injunctive relief. Yes, I think so, Your Honor. On taking scrimmage. Not now. I think it can't now, but August 8th, 2016, why not? If they no longer have the claim pending in the CFP. Because Congress, by virtue of 1500, has said you may not sue while you're pursuing these other actions on roughly the same subject. I'm speaking informally. They can't get into make a file, a timely claim for compensation under the Tucker Act. So by the time 2016 and August comes around, they no longer have the remedy. I appreciate the question, Your Honor. I'm not 100% confident in my answer, but I believe that they can. I don't believe that they have a bar in the district of Nevada at this time. The problem is that they have the bar here. So I think that they can. Is there any implication of K part BUS? I'm not sure, Your Honor. And it may be that come August of 2016, they can pursue injunctive relief on takings grounds in the Nevada court to get the water back, assuming they can prove it was a taking. Again, Your Honor, I think that's possible. I'm not 100% sure. Right, but what I want to add is that that would still leave the question of compensation if there was a taking for the period, a temporary taking. And that claim would, in fact, appear to be barred by the combination of the Little Tucker Act and the limitations period, in which case an interesting question, I think, would arise whether that combination is unconstitutional as applied by depriving them of a property right without just compensation.  I will say this, that the Supreme Court in both Keene and Tohono was very clearly aware of possible instances in which a plaintiff would not be able to pursue both suits sequentially within the statute of limitations problem. And they felt that Congress did not give them the room to craft an equitable exemption. In a non-takings context where there is no direct constitutional right to the compensatory remedy. And among other things, First English Evangelical in a footnote specifically says, no, the remedy is not just a matter of grace. Footnote six, I think it is. Okay. Specifically rejecting the SG's argument on this point. I'm not at all sure that the Nevada District Court cannot order the government in the correct circumstances to restore all the water taken. I'm not sure of that either, Your Honor. So I think that's still open. Again, we don't know at all what the resolution of the district court action will be. But I don't see a bar for them seeking the injunctive relief in that court. Wrap it up because your time is expiring. Sure. I will say, you know, again, this case is like Tohono. I mean, Tohono is clearly controlling. It's the operative facts are the determinative thing. And the operative facts are those alleged in the complaint minus the relief requested and minus the legal theory. And here it's the single act that is the basis of their complaint in both the District of Nevada and both in the CFC. And again, I will say that I appreciate your questions. The recognition of hardship, I think it's a possibility. And it's something that the Supreme Court has acknowledged back in Keene in 1993. And in Tohono, Congress is aware. Congress has not acted. Congress has spoken, has kept this on the books for 150 years. And the Supreme Court has spoken. And the answer on the facts of this case are very clear. I will sort of add, too. Thank you. I do want to ask you, I'm sorry, one more thing. In your Ninth Circuit brief on the Bivens claim, you specifically argue as a reason to reject a Bivens claim that the Tucker Act is available to provide reasonable, certain, and adequate provision that yields just compensation. How is that possible if, as is almost inevitable here, the Nevada litigation doesn't end before August 7th, 2016? I mean, my answer to that, Your Honor, is that, you know, it's available within the statute of limitations period. And we recognize that litigation takes a long time in instances. But there are also the facts of this case. I mean, the diversion was alleged to have occurred in 2010. You know, they brought both actions in 2012. So, you know, the hardship in this case is far from clear, as it was far from clear in Tohono. It's different facts. But it's not clear that there's hardship created by simply the period in which litigation takes in this case. So, you know, we recognize, you know, the Tucker Act's availability. But the Tucker Act... You've got another 10 seconds. Sure. The Tucker Act is available for a six-year period. Thank you. I extend Mr. Becker's time to a total of five minutes. I don't even know if I use that much time. I don't think our case is at all like the Tohono case. Are you familiar with Capehart? I've heard the name. I'm sure I've probably read it, but I don't... It's out of the Amargosa Valley. It's a U.S. Supreme Court case involving water rights in that area. And that's why I asked. Okay. That's probably why I've heard of it. I can't say much about it here. I don't think our case is like Tohono. They were seeking relief in two ways that would have duplicated... would have given them duplicative relief. There also was no statute of limitations in that case. And the fact that the court addressed that, we complain, of course, as dicta and that this court shouldn't follow it. Someone mentioned earlier, I believe it was Judge Chan, that the language in the complaints are very much the same. I would refer him also to... or you, I should say, to Skokomish, because it says specifically that side-by-side comparisons of complaints for common verbiage is inadequate. Rather, the court must isolate and compare the facts that must be proven to recover on a given claim. That's our whole idea that... which leads me to another point. That's our whole idea that if you set aside the Little Tucker Act claim, we would wind up with no common or redundant litigation because the elements and evidence... Are issues about the nature of your property rights, I'm speaking loosely here, in the water present in the Nevada case? With respect to... let me just go through it. With respect to the tort, it doesn't matter, because it doesn't matter if you're all over the water. They've agreed that flooding the tort claim is irrelevant to 1500. I mean, probably only with respect to standing, right? The substantive and procedural due process, I mean, probably only with respect to standing, because the fact that they didn't get Clean Water Act permit, the fact that they didn't follow FEMA regulations as implemented by the county, this is our procedural due process claim. I mean, that doesn't have very much to do with... Have they made a standing objection in the Nevada case? I think they made all the objections at the beginning, which is part of it, which would, you know, the Twombly-Iqbal situation is part of what makes this whole thing worse, because it adds a year of time and extension. So yeah, they probably did on their first motion to dismiss and their second motion to dismiss, you know, to get sort of those blanket things. I don't specifically remember, but I'd be surprised if they didn't. To the issue of whether can we be made whole in one court alone, I think the answer to that question is clearly no. You probably knew that when you asked the question. And unless you have any other questions, those are the points I wanted to make on my rebuttal. Let me just say to you, counsel, to the extent that you're going to try to assert state or county implicated rights, you better take a look at Cape Heart. Thank you, counsel. Since I've got 140 and you said that, can I ask you why you think that's a concern here? I mean, the thing I'm thinking about... I'm not going to teach you a lot. Okay. Just take a look at it. Okay. Then I'm going to guess... Probably about 1979. Yeah, the FEMA regulations are implemented by the county, if that's what you're talking about, but that's a federal statute that has the FEMA regulations implemented by the county. And even with the Clean Water Act violation, is we take a procedural to process problems. So thank you for your time.